Whitaker, Judge,
delivered the opinion of the court:
Plaintiffs sue to recover $29,558.94 as the extra expense incurred as the result of an order of the contracting officer requiring it to work at both ends of a tunnel known as “Lane Tunnel,” instead of at one end, as it was doing. Plaintiffs had a contract with defendant to do certain work connected with the relocation of the Baltimore & Ohio Railroad at Ty-gart River Reservoir in West Virginia. Included in this work was the building of Lane Tunnel. The original completion date for the tunnel work was February 9,1937, but on January 13, 1937, the time had been extended to April 25, 1937. It was later extended to May 7,1937, for causes arising before January 13, 1937.
On January 13, 1937, the excavation work on the tunnel was five months behind schedule, and the work of concreting it was three months behind. On December 5,1936, plaintiffs had agreed to excavate from the south end simultaneously with the north end, but on January 13, 1937, this work had not begun. In order to insure completion on time the contracting officer ordered plaintiffs on that date to place the necessary men and plant at the south end of the tunnel as well as at the north end, so that excavation and concreting might be carried on simultaneously from both ends. At this time the completion date was only slightly over 3 months off.
*494 Plaintiffs complied, but under protest. They stated that under their present method they thought they could complete the contract on time, and that by the installation of an additional plant and the employment of additional men, as required, the contract would be completed before time. Since, they said, this would be of advantage to the government, plaintiffs notified it they would claim the additional expense entailed.
The tunnel was completed on May 1,1937, and turned over to defendant on May 7,1937, the completion date as extended.
Plaintiffs claim the extra expense incident to concreting at both ends at the same time; they admit it was necessary to excavate at both ends at the same time in order to complete the work on time, but they say it was not necessary to concrete at both ends.
The order of the contracting officer was based upon paragraphs 1-15 and 1-25 of the specifications. Paragraph 1-25 (a) of the specifications required the contractors to employ on the job an adequate plant and sufficient men to complete the work on time, and paragraph 6-12 required them to provide “an approved batch-type mixing plant with a minimum capacity of 50 cubic yards of concrete per 8 hours.” The contractors had such a plant on the job at the time the order of January 13, 1937 was issued.
However, paragraph 1-25 (b) provided that:
Should the contractor fail to maintain the rate of progress which was specified in his bid or as required by these specifications, the contracting officer will require that additional men and/or plant be placed on the work, or a reorganization of plant layout be effected in order that the work be brought up to schedule and so maintained. * * *
It was under this authority that the contracting officer acted, the contractors being at the time 5 months behind with the excavating and 3 months behind with the concreting.
This paragraph gave the contracting officer the authority to give the order he gave, if it was in fact necessary, or if it reasonably appeared to be necessary.
At first glance, at least, it appears that it was necessary since by so operating the work was not completed until May *495 1, 1937, and was not turned over to the defendant until May 7, 1937, the extended completion date. However, the contracting officer, in answer to a letter from plaintiffs’ attorneys under date of October 31, 1938, admitted that the tunnel could have been completed at approximately the same time had concreting operations been continued from the north end only, provided the same number of forms had been used. The delay in construction on J anuary 13,1937 was obviously and admittedly due to the fact the excavation was behind. Any delay in concreting was incident to the delay in excavation. Hence, the remedy for the situation existing on January 13, 1937, was to order excavation only at both ends of the tunnel; apparently it was not necessary to also order concreting at both ends.
The extra cost of ordering concreting at both ends was $22,004.82. This is, however, subject to a deduction of $5,400, which sum it is admitted it would have been necessary to spend to provide sufficient additional concrete forms to have completed concreting in time to have turned over the tunnel by the completion date.
It is, however, admitted that when the contracting officer issued his order of J anuary 13, 1937, he was honestly of the opinion that it was necessary to do not only the excavating but also the concreting at both ends of the tunnel in order to complete the work by the completion date. No arbitrary or capricious action is, therefore, involved, but only an allegedly mistaken, though honest, judgment, resulting in an order which put the contractors to additional expense.
It would appear unnecessary to decide, however, whether such conduct on the part of the contracting officer would render the defendant liable, because of the following:
About 3 days after the tunnel was turned over to the defendant plaintiffs made claim for the extra expense of working from both ends. This claim was denied by the contracting officer, but on appeal was allowed by the Chief of Engineers, who was the authorized representative of the head of the department, in the amount of $22,004.82. He expressed the opinion that the contracting officer was justified in concluding that the work would not be completed on time unless remedial steps were taken, and that he was justified in *496 ordering such steps to be taken, but that he did not have the right to specify the detailed method by which operations should be accelerated. His order doing so, the Chief of Engineers said, constituted a change in the specifications entitling the contractors to an equitable adjustment under article 3 of the contract.
Evidently the Chief of Engineers had reference to the article of the specifications requiring the use of one concrete mixer. The order requiring the use of two was, he evidently thought, a change in the specifications, entitling the contractor to an equitable adjustment under article 3 of the contract.
Article 1-35 of the specifications provides that “on all questions relating to * * * the interpretation of the specifications, the decision of the contracting officer shall be final, subject to appeal as provided for in article 15 of the contract.” Article 15 makes the decision of the head of the department “final and conclusive upon the parties thereto as to such questions.”
The Chief of Engineers had before him on appeal the proper interpretation of article 6-12 of the specifications calling for the use of one concrete mixer, and article 1-25 (b) giving the contracting officer the right to require the use of additional men and plant on the work in case it fell behind. He decided that 1-25 (b) did not authorize the contracting officer to specify the use of two.
Under the decisions of the Supreme Court in United States v. McShain, 308 U. S. 512, and Plumley v. United States, 226 U. S. 545, this decision is final and conclusive.
In the MeShain case we said that the decision of the contracting officer and of the head of the department on whether or not the specifications required the use of a gravel backfill over certain drains was not a decision of a question of fact and, being an interpretation of the specifications, was not binding on the parties. The Supreme Court reversed on the authority of the Plumley case and of Merrill-Ruckgaber Co. v. United States, 241 U. S. 387.
This decision is binding on us. Hence, the decision of the Chief of Engineers being on the proper interpretation of the specifications, we must hold that it is final and conclusive.
*497 But tbe defendant says bis decision was so grossly erroneous as to imply bad faith and, hence, is not binding. We do not think so. The contracting officer conceded, as we have stated, that working from one end only the concreting could possibly have been completed on the same day it was completed by working from both ends. This being so, there was ground for the decision of the Chief of Engineers that he was not justified in requiring the use of a mixer at each end, and in holding that this requirement constituted a change in the specifications.
The Chief of Engineers found that an equitable adjustment on account of the change was $22,004.82. However, the plaintiffs concede in the stipulation of facts that this sum includes $5,400 for furnishing a fourth concrete form and they concede that it was necessary to use a fourth form in order to complete the work on time. This amount, therefore, should be deducted from the $22,004.82. Plaintiffs are entitled to recover $16,604.82. Judgment for this amount will be rendered. It is so ordered.
Madden, Judge; Littleton, Judge; Whalex, Chief Justice; and Booth, Chief Justice (retired), recalled, concur.